## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-20008-CR-LEIBOWITZ(s)

**UNITED STATES OF AMERICA**

**vs.**

**MICHAEL KARL GEILENFELD,**

    **Defendant.**

_____ /

### THE UNITED STATES' OMNIBUS MOTION *IN LIMINE* REGARDING
### TRIAL EVIDENCE

Pursuant to this Court's Order Setting Trial and Pretrial Schedule (ECF No. 30), and as further set forth below, the Government moves *in limine* to obtain pretrial rulings on the admissibility (or lack thereof) of certain evidence at the trial of Michael Geilenfeld:

**I.**    **To Preclude Evidence of, and Reference to, Other Prosecutions and Litigation, Investigations, and Proceedings Concerning Allegations of Abuse Against Geilenfeld, As Irrelevant and Creating a Danger of Unfair Prejudice, Confusing the Issues, and Misleading the Jury**

    A.    Background

The Defendant, a U.S citizen, worked as a missionary in Haiti before founding the St. Joseph's Home for Boys ("SJHB") in 1985.  SJHB was one of three Haitian orphanages/residences founded by the Defendant (along with Trinity House and Wings of Hope), which together comprised the "St. Joseph's Family" ("SJF").  The Defendant also created the Resurrection Dance Theatre, which was comprised of SJF residents and traveled to the United States to raise money for SJF.  The Defendant directed SJHB until at least 2014, when a complaint was filed against him in Haiti for abusing children at the residence.  He fled to the

Dominican Republic, where he resided until Dominican authorities deported him to the United States in May 2019.

The 2014 Haitian complaint was not the only allegation of abuse made against the Defendant.  Indeed, the Defendant has been the subject of numerous allegations of sexual, physical, and emotional abuse and neglect, involving child residents, since at least the 1980s, both in the United States and in Haiti.  *See, e.g.*, United States of America's Notice Pursuant to Fed. Rules of Evid. 413, 414, and 404(b) (ECF No. 37) (summarizing the Defendant's abuse of the four charged victims (Minors Victims 1-4) and eleven other uncharged victims (Victims A-C, G-N)).  As far as the Government has deciphered (after having, *inter alia*, reviewed and produced to the defense thousands of pages of material, including records from other countries and other jurisdictions, a good deal of it in foreign languages), complaints were made and (to greatly varying degrees) investigated as follows, prior to the instant federal investigation and prosecution:

- In 1987 in Boston, Massachusetts.  *See, e.g.*, Bates 3959 (statement of the Defendant that two children accused him of abuse but "recanted it, and within a 24-hour period it was resolved").

- In 1989 in Minnesota.  *See, e.g.*, Bates 2466-2615 (file noting that Wright County Sheriff's Department interviewed a boy who disclosed being physically and sexually abused by Geilenfeld, that the state Bureau of Criminal Apprehension advised that the sexual abuse did not occur in Minnesota so there was no further investigation, and that subsequent law enforcement interviews, including of Victim K, did not result in charges).

- In 1990 in Haiti.  *See, e.g.*, Bates 3959-60 (statement of the Defendant that he was accused of abuse while in the United States and that the (seemingly Haitian) "Department of Social Services" investigated and let him return to SJHB).

- In 1995 in Detroit, Michigan.  *See, e.g.*, Bates 3960 (statement of the Defendant that "The State of Michigan . . . did an investigation" into allegations of abuse and that he thereafter was allowed to return to Haiti with the children in question).

- In 1999 and 2007 in North Carolina.  *See, e.g.*, Bates 2632 (report that, "[i]n 1999, allegations of abuse by Geilenfeld were raised but no witnesses could be located"

and that in 2007 a tipster had contacted federal law enforcement and stated that "several young adult males from Haiti . . . told her of sexual abuse that occurred when they were younger").

- In 2011 in Atlanta, Georgia. *See, e.g.*, Bates 2639-2642 (reporting that another tipster had contacted federal law enforcement regarding concerns with financial fraud related to SJHB and had "advised that Geilenfeld has had allegations of sexual molestation with the boys of SJHB for more than 20 years").

- In 2011-2013 in North Carolina. *See, e.g.*, Bates 16849-16850 (report explaining that a U.S. law enforcement agent had interviewed a "victim/witness [who] said Geilenfeld had touched his penis when he was 17 years old" but that the agent had "not been able to locate any victims/witnesses who have disclosed sexual abuse within the enactment of the [federal] statute" providing jurisdiction over such an offense and thus the federal investigation was being closed).

- In 2014 in Haiti. *See, e.g.*, Bates 8414-8418 (complaint filed by Haitian attorney on behalf of 5 named complainants (including Victims I and L), alleging the Defendant and other individuals engaged in sexual abuse, abuse of authority, drug use, and other offenses at SJF).

- In 2015 in Haiti. *See, e.g.*, Bates 8396-8413 (Haitian arrest warrant dated Oct. 29, 2015, predicated on 7 individuals, including Minor Victims 1, 2, and 4, as complainants).

Until the instant case, the Defendant had not been criminally charged in the United States, and the status and circumstances of the Haitian cases remain unclear, notwithstanding undersigned counsel's efforts to get more certainty. *See, e.g.*, Bates 18530-18537 (translated records from the Haitian Court of Appeal and Haitian National Police indicating that at least one case was still pending against the Defendant as of 2021).

Further complicating the backdrop of the instant case, the Defendant initiated civil lawsuits against two U.S. citizens who accused him of sexually abusing Haitian children. *See, e.g.*, Bates 2726-6321 (filings from 2013-2016 defamation suit against Paul Kendrick ("Kendrick") in U.S. District Court for the District of Maine); Bates 18315-18436 (transcript of 2022 deposition of the Defendant in defamation suit against Valerie Dirksen ("Dirksen") in Gwinnett County, Georgia). The federal suit in Maine went to trial in July 2015, and the trial

included excerpts of previously recorded deposition testimony and live testimony from six then-adult men who stated that Geilenfeld had sexually abused them when they were minors.[1]  None of the charged victims of the instant criminal case were called to testify.  Bates 2726-6321.  The civil jury in Maine ultimately concluded that Kendrick had defamed Geilenfeld, but the suit was thereafter dismissed on jurisdictional grounds and re-filed in state court, where a settlement occurred.  *See, e.g.*, Tr. of Detention Hr'g (ECF No. 8-5, at 10) (statement of the Defendant's counsel during 1/26/24 detention hearing in the instant case).  Geilenfeld likewise dismissed his case against Dirksen.

Turning to the instant criminal case, the Government is, of course, not able to charge every crime or act of wrongdoing the Defendant has committed or been alleged to commit; the Government is rightfully limited to charging acts that constitute federal crimes and for which there is no statute-of-limitations bar or other legal impediment to proving the charge beyond a reasonable doubt.

In light of this factual and legal backdrop, the Defendant is charged with one count of traveling to Haiti for the purpose of engaging in illicit sexual conduct between approximately November 2006 and December 2010 (Count 1) and four counts of engaging in illicit sexual conduct in Haiti with specific child residents of his orphanage during a particular time period:

| Charged Victim (and Count) | Charged Time Period |
|---|---|
| Minor Victim 1 (Count 2) | 2007-2010 |
| Minor Victim 2 (Count 3) | 2009 |
| Minor Victim 3 (Count 4) | 2008-2009 |

---

[1] Victims H and L testified live at the civil trial; Victims I, K, and M did not testify live at trial, though excerpts of their previously recorded depositions were introduced.

| Minor Victim 4 (Count 5) | 2008-2010 |
|---|---|

The Government has also noticed its intent to introduce evidence of other molestation, sexual assaults, and acts committed by the Defendant, consistent with Federal Rules of Evidence 413, 414, and 404(b).  *See* ECF No. 37.  As set forth in that Notice, the Government is continuing to assess the universe of evidence and to determine which witnesses it will ultimately call to testify at trial.  The Government submits the instant motion *in limine* to obtain clarity on the scope of admissible evidence and argument regarding the many allegations of abuse that have arisen over the years.

> B.      Legal Argument

The jury's task will be to determine the Defendant's guilt for the *charged* crimes, and the Court should preclude the defense from introducing evidence, or making reference to, the prior prosecutions and litigation (including the verdict/outcome), investigations (including the results thereof), and similar proceedings, because to the extent such information *may* be relevant,[2] "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  More specifically, such evidence does not tend to make any material facts in the instant criminal case more or less probable, and—of greater concern—would confuse the issues, mislead the jury, lead to mini trials within the trial, and create unfair prejudice.

---

[2] Under the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401. "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

In short, the prior investigations and lawsuits centered on victims and witnesses other than Minor Victims 1-4,[3] largely addressed time periods different than those charged in this case, involved investigators and attorneys distinct from those involved in the present case, and concerned different legal issues and standards.  For example, the Defendant's prior civil litigation involved questions of state law and a particular focus on the state of mind of the individuals sued in that case, Kendrick and Dirksen (who had not themselves been sexually abused by, or observed abuse by the Defendant); in contrast, the instant case is predicated on violations of specific federal criminal statutes, and the key witnesses will not be Kendrick and Dirksen but rather the individuals who experienced the abuse and observed relevant corroborating matters.[4]  As for the absence of charges or other consequences arising out of prior investigations, many factors may have gone into those decisions (e.g., lack of venue, allocation of limited resources, and prosecutorial discretion; bribery and corruption in Haiti), and the decisions of those actors do not mean the Defendant did not commit the crimes with which he is presently charged.

---

[3] Minor Victim 4 was interviewed by a U.S. law enforcement agent in 2012 but at that time did not disclose having been sexually abused by the Defendant, as (per the report of his statement to other U.S. law enforcement agents in 2020) he had been offered money to remain quiet.  The Government is not seeking to preclude questioning of Minor Victim 4 about this prior seemingly inconsistent statement, consistent with Federal Rule of Evidence 613(b).  Nor is the Government seeking to preclude questioning any other witness about any prior inconsistent statements the witness may have made, consistent with the Federal Rules of Evidence.  However, the Government submits that any questioning, arguments, or suggestions about the outcomes of the investigations/litigation/proceedings are improper, as set forth herein, and that extraneous information about those matters should not be injected into the impeachment inquiry, to avoid inviting jury speculation about the outcomes.  *See infra* (discussing limiting language to be used if such impeachment is warranted).

[4] Although some victims testified before the jury in the federal civil trial, the bulk of the victim testimony was presented via prerecorded deposition, such that the jury did not have the opportunity to observe the victims/witnesses and to assess their demeanor and credibility in person.  And as previously stated, Minor Victims 1-4 did not testify in the civil litigation.

Despite these distinctions, the Defendant has nonetheless argued in this very case that the outcomes of the prior litigation and investigations should be considered evidence of his innocence here. *See, e.g.*, Def. Mot. for Release on Personal Recognizance & Determination of Venue (D. Colo. No. 8, at 1-4) (arguing that "Mr. Geilenfeld's innocence has been demonstrated . . . time and time again"); *see also* Tr. of Civil Trial (D. Me. ECF No. 452) (Bates 4209-4123) (Geilenfeld testifying in civil trial to his purported understanding of the Haitian charges brought against him in 2014, including his characterization that "[t]he judge released me, set me free, declared me innocent"). The Court should preclude him from this strategy at trial.

If the jury charged with determining the Defendant's guilt in this criminal case is exposed to information regarding a civil jury's or Haitian judge's verdict in favor of the Defendant in a case involving similar (though not identical) allegations, there is a substantial risk that jurors will improperly conclude the Defendant is not guilty of the instant charges rather than make an independent assessment of the evidence presented to them. So too if the jury is informed that law enforcement, child welfare services, or other actors previously received complaints of abuse but that the Defendant did not face criminal charges or lose his access to children. Conversely, reference to the litigation or proceedings without stating the outcomes would invite jury speculation and risk unfair prejudice, as the jury may wrongfully believe that the victims' interests have been sufficiently vindicated in civil or foreign court and that, therefore, a criminal conviction here is not warranted. To mitigate against this risk of jury nullification, the Government would need to present significant additional evidence and argument concerning the litigation/proceedings, essentially creating mini trials within this trial.

It is thus no surprise that courts have repeatedly precluded evidence of related civil lawsuits and prior criminal proceedings against a defendant under Rules 401-403. In *United*

*States v. Miller*, for example, the court granted the United States' motion *in limine* to preclude reference to a prior trial against the criminal defendant. 644 F. Supp. 3d 373, 375 (E.D. Ky. 2022). The court explained that "evidence of the defendant's previous trial, or of the jury's inability to reach a verdict in that trial, is not probative of the defendant's guilt or innocence and is irrelevant." *Id.* Moreover, "even if mention of the previous trial was relevant, it should be excluded under Rule 403 because 'remarking on the prior trial or its outcome would certainly confuse and mislead the new jury, and unfairly prejudice the government.'" *Id.* (citation omitted). It continued:

> Accordingly, the parties, attorneys and witnesses will be prohibited from referring to the defendant's prior trial or otherwise suggesting that this case has been previously tried. If either party seeks to impeach a witness with that witness's testimony from the first trial, the party should refer to the witness's testimony in a prior "proceeding" without commenting that the "proceeding" was an earlier trial of the defendant's case.

*Id.*

Likewise, in *United States v. Arrington*, the court granted the United States' motion *in limine* barring "evidence concerning the verdicts rendered in [a prior trial] and the mention that witnesses have previously testified in this matter in a prior trial." *See* No. 15-cr-33, 2022 WL 4077685, at *3 (W.D.N.Y. Sept. 6, 2022) ("[T]he Court cannot fathom how mentioning the prior trial or its result would be relevant . . . . And . . . remarking on the prior trial or its outcome would certainly confuse and mislead the new jury, and unfairly prejudice the Government."). As in *Miller*, the court ordered that, "[i]f either party seeks to impeach a witness with that witness's testimony from the first trial, the party shall refer to the witness's testimony in a prior 'proceeding' without commenting that said 'proceeding' was an earlier trial." *Arrington*, 2022 WL 4077685, at *3; *accord Crouch v. John Jewell Aircraft, Inc.*. No. 3:07-cv-638, 2016 WL

9459354, at *1-2 (W.D. Ky. Mar. 29, 2016) (precluding defense not only from "referring to the verdict of a prior case" but also ordering that "no person (counsel, party, or witness) shall be permitted to reference the [prior civil trial] or otherwise indicate that other litigation between [one of the parties] and [a third party] has occurred.   To the extent testimony given in conjunction with the [earlier] action needs to be referenced, it should be referenced as 'prior testimony' or 'prior testimony on [date].'").[5]

Similarly, courts have excluded evidence of prior investigations involving the same defendants or arising from the same set of facts.   In *United States v. Shaw*, for instance, the Government moved *in limine* "to exclude evidence of prior investigations [by the Department of Justice and a university] related to the conduct at issue in this case [i.e., sexual assaults committed by a university employee]."   22-cr-105, 2023 WL 35669992, at *2-3 (N.D. Cal. May 19, 2023).   The court granted the motion, "except for [narrow, delineated] circumstances [such

---

[5] *See also, e.g.*, *United States v. Sinclair*, 74 F.3d 753, 757 (7th Cir. 1996) (affirming exclusion of "testimony [in criminal trial] that would involve legal issues raised in the [related] civil suits" because the evidence "could confuse or distract the jury"); *United States v. Anderson*, 933 F.2d 1261, 1276 (5th Cir. 1991) (affirming exclusion of "evidence of the pending civil lawsuit . . . because it would confuse the issues for the jury or unduly consume time"); *United States v. Thompson*, 606 F. Supp. 3d 1058, 1061, 1064-65 (W.D. Wash. 2022) (excluding evidence of related settlement between fraud victim and fraud victim's customers, because "a settlement is not a reliable indicator of misconduct, and the jury may be unduly swayed by the large amount of money involved and the fact that [the victim] agreed to the settlement"); *United States v. Park*, No. 08-cr-220, 2008 WL 2338298 at *7 (C.D. Cal. May 27, 2008) (excluding evidence of related "civil settlement statements" at criminal trial because "the court would have to give limiting instructions that might lead to jury questions or confusion" and, "given the disputed facts surrounding the settlement itself, the court would effectively have to conduct a mini-trial regarding [the] settlement negotiations," which would "result in distraction and jury confusion"); *United States v. Wittig*, No. 03-40142, 2005 WL 1227938, at *3 (D. Kan. May 23, 2005) (granting government's motion *in limine* to exclude reference to related civil arbitration because a "criminal trial is not the appropriate venue to try the civil arbitration proceeding" and "injecting the civil arbitration into the criminal trial will confuse issues and the jury" and be "potentially prejudicial to all parties"); *United States v. Shaw*, No. 22-cr-105, 2023 WL 3569992, at *2-3 (N.D. Cal. May 19, 2023) (granting the Government's motion *in limine* to "exclude evidence of related civil lawsuits except to impeach a testifying witness").

as] impeachment of a witness who made an inconsistent statement during the prior investigations." *Id.*; *cf. Watkins v. Wallace*, No. 4:12-cv-1268, 2014 WL 3361769, at *3, 6-7 (E.D. Mo. July 9, 2014) (rejecting state criminal defendant's claim in habeas proceeding that trial court had erred in granting prosecutor's motion *in limine* to exclude "evidence regarding previous unsubstantiated claims of sexual abuse," including "prior investigations" that the defense maintained resulted in "findings by the Division of Family Service that the claims were unsubstantiated" and the local prosecutor's having "declined to prosecute"); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (affirming exclusion of statement made in Internal Affairs investigation/disciplinary proceeding because "[t]he jury might have given unfair or undue weight to this evidence or they might have been confused as to the relevance of this evidence"); *Hermosillo v. County of San Bernardino*, No. EDCV 15-33, 2017 WL 5479645, at *4 (C.D. Cal. Feb. 16, 2017) (excluding "evidence of prior or subsequent investigations of or allegations against the individual defendants, including from prior occasions on which the defendant's actions were reviewed for breach of workplace policy, because "introducing evidence of the prior incidents would be time consuming, lead to confusion of the issues, and could mislead the jury").

Accordingly, the Government requests that (with the exception of properly impeaching a testifying witness with that witness's prior inconsistent statement[6]) the Court rule that evidence of, and reference to, other prosecutions and litigation (including the verdict/outcome),

---

[6] As the Eleventh Circuit has long made clear, "a witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own." *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993). Thus, it is impermissible to use an "agent's summary" of a witness's oral statement—such as an FBI 302 or other Report of Interview (ROI) or Memorandum of Interview (MOI)—if there is not first a "showing that [the witness] had adopted the [report

investigations (including that charges were not thereafter brought), and similar proceedings concerning allegations of abuse against the Defendant be precluded.

**II.**     **To Preclude Reference to Sentences/Punishment if Convicted**

This Court should preclude all direct or indirect reference to, or evidence of, the sentence that might be imposed (and other collateral consequences) if the Defendant is convicted.

"The jury's role is to determine guilt or innocence, and it should reach its verdict without regard to the potential sentence imposed." *United States v. Bergman*, 852 F.3d 1046, 1073 (11th Cir. 2017); *see also, e.g.*, Eleventh Circuit Pattern Jury Instruction B10.2 (Caution: Punishment) ("You must never consider punishment in any way to decide whether the Defendant is guilty or not guilty. If you find the Defendant guilty, the punishment is for the Judge alone to decide later."). "Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Shannon v. United States*, 512 U.S. 573, 579 (1994). "Referencing potential punishment is an implicit jury nullification argument, and defense counsel cannot encourage nullification." *United States v. Smith*, No. 1:18-CR-1182019, WL 4281908, at *2 (M.D. Ala. Sept. 10, 2019) (citing, *inter alia*, *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983)).

Consequently, the Court should rule that the parties (including counsel) refrain from any direct or indirect argument or reference to potential punishment and/or collateral consequences of a conviction, and that their witnesses be instructed accordingly.

---

summary] as his own." *Id.*   The Government requests that the Court hold the parties to this requirement.

III.     **To Preclude Improper Character Evidence, Including Specific Instances of Good Conduct by the Defendant**

This Court should preclude the Defendant from offering improper character evidence, including specific instances of good conduct by the Defendant.

Federal Rule of Evidence 404 provides that, as a general rule, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).  In a criminal case, however, "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a)(2)(A).  Rule 405, in turn, sets forth the permissible "methods of proving character":

> (a) By Reputation or Opinion.  When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion.  On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.
>
> (b) By Specific Instances of Conduct.  When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct.

Fed. R. Evid. 405.

Applying this framework, courts have repeatedly ruled that a criminal defendant may not simply introduce evidence that the defendant possesses a generally "good" character (e.g., kind, hardworking, generous), and have made clear that "specific acts of good character" or "good conduct" are "not admissible to negate criminal intent." *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008). *See, e.g.*, *id.* (affirming Government's motion *in limine* to preclude fraud defendant from introducing evidence that he had conducted purportedly legitimate business activities on other occasions, because such evidence did "not bear on his intent to defraud with

respect to the [charged conduct]"); *United States v. Camejo*, 929 F.2d 610, 612-613 (11th Cir. 1991) (affirming exclusion of drug defendant's proffered character witness testimony that the defendant had refused to join another drug ring, because such testimony was "inadmissible character evidence").   With respect to sex crimes specifically, case law supports excluding evidence of a defendant's "generally 'good character—that is, that he is a good person, a family man, or is generous, religious, moral, or hard-working"; evidence of his "honesty, integrity, kindness, and generosity; as well as . . . 'hospitality.'"  *See United States v. Walji*, No. 2:23-cr-11, 2024 U.S. Dist. LEXIS 161845, at *5-8 (W.D. Wash. Sept. 9, 2024) (granting Government's motion *in limine* to exclude such categories as "not pertinent to the instant charges of sexual abuse").

        In prior litigation, the Defendant—through his own testimony, that of other witnesses, and through his attorneys—touted his purportedly good character and specific instances thereof, including but not limited to his missionary work, his interactions with and inspiration from Mother Teresa, and the impoverished circumstances under which he chose to work in various countries.  *See, e.g.*, Tr. of Civil Trial (Bates 3969-3971, 3975-3982) (testimony of Geilenfeld). He also called witnesses to testify that they were not themselves sexually abused by the Defendant and/or that they did not observe or hear of the Defendant's abuse. *See, e.g.*, Tr. of Civil Trial (Bates 3004-3005) (testimony of witness that rather than complaints against Geilenfeld, she received reports of "good work" that Geilenfeld did); Tr. of Civil Trial (Bates 4552) (testimony of SJF employee: "I never been abused by anyone, by Michael Geilenfeld at all. . . . I never heard any boys who have mentioned that [sexual abuse] to me.").

The Defendant should be precluded from introducing such evidence of his seemingly good character and conduct in the instant case, as it does not meet the requirements of the Rules of Evidence and encourages jury nullification.

**IV.**   **To Admit Evidence of Other Child Molestation, Sexual Assaults, and Acts by the Defendant**

The Government has previously filed a notice of intent to admit evidence of other child molestation, sexual assaults, and acts committed by the Defendant, pursuant to Rules 413, 414, and 404(b).   *See* ECF No. 37 (setting forth the proffered evidence and the legal bases for admission).   The Government hereby incorporates that notice here and seeks a ruling from the Court that such evidence is admissible.

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court issue pretrial rulings on the admissibility of the above categories of evidence, as requested above and in the proposed order attached hereto.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   */s/ Lacee Elizabeth Monk*
Lacee Elizabeth Monk
Assistant United States Attorney
Florida Bar No.100322
99 NE 4th Street
Miami, Florida 33132-2111
Phone: (305) 961-9427
Email: Lacee.Monk@usdoj.gov

*/s/ Jessica L. Urban*
Jessica L. Urban
Florida Special Bar ID No. A5503222

Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW
Washington, DC 20005
Phone: (202) 353-4146
Jessica.Urban@usdoj.gov

*/s/ Eduardo Palomo*
Eduardo Palomo
Florida Special Bar ID No. A5503186
Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW
Washington, DC 20005
Phone: (202) 305-9635
Eduardo.Palomo2@usdoj.gov

## **LOCAL RULE 88.1 CERTIFICATE OF CONFERRAL**

I hereby certify that on September 10, 2024, pursuant to Local Rule 88.1 and the provisions of this Court's Scheduling Order (ECF No. 30), I conferred with opposing counsel, D'Arsey Houlihan and Jean-Pierre Gilbert, by telephone in a good-faith effort to resolve by agreement the subject matter of the motion, and the Defendant (through counsel) did not consent to the relief sought herein.

> */s/ Jessica L. Urban*
> Jessica L. Urban
> Trial Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2024, I filed this document electronically using the

CM/ECF system and thereby caused a copy of the same to be served on all counsel of record.


*/s/ Jessica L. Urban*
Jessica L. Urban
Trial Attorney

17