UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20008-CR-LEIBOWITZ

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MICHAEL KARL GEILENFELD,

    Defendant.
_____/

## DEFENDANT'S MOTION IN LIMINE

MICHAEL GEILENFELD, by and through undersigned counsel and hereby files this Motion in Limine to exclude Government Exhibit 12 and to exclude testimony and states:

1. Government Exhibit 12 depicts MV 2, shirtless, displaying a scar on his chest.

2. Defense anticipates that the government will seek to elicit testimony that MV2 was stabbed by another resident of St. Joseph's in retaliation for MV2 allegedly rejecting Mr. Geilenfeld's alleged advances.

3. MV2 has stated that the alleged assault by Mr. Geilenfeld occurred in around 2009. DE 56, Count 3.

4. MV2 has stated in discovery provided by the Government that the stabbing occurred "after two, three years, uh one or two years between what happened and the stabbing." Gov't Discovery, Bates 000547. "Brunel was not yet in the home [at the time of the alleged assault by Mr. Geilenfeld]. Brunel came to the home after, uh, after the earthquake. After the house collapsed." Gov't Discovery Bates 000552.

5. When asked "were you already, like, mad at each other, even before, he stabbed you? How did that happen?" MV2 responded:

> Well. [SILENT]. Brunel, was, was, as I told you, he did not get along with the other kids in the house. Uh, so, I believe that Michel told him about my reaction in the bedroom. Ever since after that, he was always mean with me, like, he didn't want to cross path with me, you know as he was older than me, he didn't like to see me, he would always run after me, things like that. Also, he liked to smoke. He smoked weeds, uh, cocaine, coke, and all that.  Gov't Discovery Bates, 000550

6. When asked if he'd seen Brunel run away, MV2 stated:

> No, I did not see him when he ran away, but, I told you already, way before that, he was running the knife on the boys' faces. Then, during night time, while I was going up a staircase like that, I don't know, apparently he had an argument with, uh, director, Bill. Then, while I was going up the staircase like that, he was standing,

2

>hiding on the corner like this, and then he stabbed me.
>Gov't Discovery, Bates 000555

7. MV2 states that Brunel was threatening other individuals in the facility that evening and had had an argument with the director, Bill Nathan (Brunel actually cut his throat).  MV2 is merely speculating or guessing as to Brunel's motivation for the attack.

8. MV2 is speculating without personal knowledge that Mr. Geilenfeld told Brunel about the alleged rejection approximately *two years earlier* and that that was the motivation for Brunel's actions. Even if there was more than mere speculation, there is nothing in the proposed testimony suggesting that Mr. Geilenfeld directed or could have anticipated Brunel's actions. MV2's testimony is not relevant, it is highly prejudicial and violates Federal Rules of Evidence 402 and 602.

    Respectfully Submitted,

    HECTOR A. DOPICO
    FEDERAL PUBLIC DEFENDER

    BY:     *s/R. D'Arsey Houlihan*
        R. D'Arsey Houlihan
        Supervisory Assistant Federal Public Defender
        Florida Bar No. 100536
        150 W. Flagler Street, Suite 1700
        Miami, Florida 33130-1556
        (305) 530-7000/(305) 536-4559, Fax
        E-Mail: d'arsey_houlihan@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on **February 4, 2025**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/R. D'Arsey Houlihan*
R. D'Arsey Houlihan
